Hon. Robert S. Lasnik

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   BRENT NICHOLSON, an individual, NMP
CONCORD II, LLC, a Washington limited
11   liability company; SAN PABLO CRUISE,
LLC, a Washington limited liability company;
12   OAKLEY DOKLEY, LLC, a Washington
limited liability company;  HOLY ROSE,LLC,
13   a Washington limited liability company;
SUNNYBOY, LLC, a Washington limited
14   liability company;  FULL TO THE BREM,
LLC, a Washington limited liability company;
15   HIGH HO SILVER-DALE, LLC, a Washington
limited liability company;  WHATEVERETT,
16   LLC, a Washington limited liability company;
THE RIGHT ANGELES, LLC, a Washington
17   limited liability company;  NO ONE TO
BLAINE, LLC, a Washington limited liability
18   company;  POULSBO HOLDINGS, LLC, a
Washington limited liability company,
19

20                                    Plaintiffs,

21                    v.

22   THRIFTY PAYLESS, INC., a California
corporation; and RITE AID CORPORATION,
23   a Delaware corporation,

24                                    Defendants.

25

26

27

Case No.   12-cv-01121 RSL

**RITE AID'S MOTION FOR
SUMMARY JUDGMENT
DISMISSING PLAINTIFFS' THIRD
THROUGH TENTH CAUSES OF
ACTION**

NOTE ON MOTION CALENDAR:
October 18, 2013

ORAL ARGUMENT REQUESTED

Defendants' Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

**Table of Contents**

I.     QUANTUM MERUIT CLAIM FAILS BECAUSE THERE ARE EXPRESS CONTRACTS AND DEFENDANTS RECEIVED NO BENEFIT .............................. 1

II.    PLAINTIFFS' PROMISSORY ESTOPPEL CLAIM IS BARRED ............................. 6

III.   IT IS UNDISPUTED THAT RITE AID WAS NOT NICHOLSON'S PARTNER AND THEREFORE OWED HIM NO FIDUCIARY DUTIES ................................. 9

IV.    NECESSARY ELEMENTS FOR PLAINTIFFS' CPA CLAIM ARE LACKING........ 11

       A.    LEASE TERMINATIONS IN RESPONSE TO A FAILURE TO PERFORM IS NEITHER UNFAIR NOR DECEPTIVE.................................................. 12

       B.    THIS IS A UNIQUE DISPUTE WITHOUT PUBLIC IMPACT ............................ 14

V.     PLAINTIFFS DO NOT HAVE A VIABLE CLAIM FOR UNFAIR COMPETITION FOR THE CALIFORNIA PROJECTS......................... 15

VI.    THERE ARE NO GROUNDS FOR PLAINTIFFS' PUNITIVE DAMAGES CLAIM. 17

VII.   PLAINTIFFS' CANNOT CLAIM RITE AID TORTIOUSLY INTERFERED WITH ITS SUBSIDIARY'S LEASES .......................... 20

VIII.  PLAINTIFFS' CLAIM ON THE LEASE GUARANTEES FAILS .............................. 23

CONCLUSION......................................................................................... 24

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - i
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

Thrifty Payless, Inc. has pending a motion for summary judgment dismissing plaintiffs' First and Second Causes of Action relating to the parties' leases.  Dkt. No. 25 ("Lease Claims Motion").  Rite Aid now moves for summary dismissal of plaintiffs' remaining Third through Tenth Causes of Action.[1]  This motion is based on the pleadings and motion on file and on the exhibits attached to the Declaration of Delbert Miller.

## I.   QUANTUM MERUIT CLAIM FAILS BECAUSE THERE ARE EXPRESS CONTRACTS AND DEFENDANTS RECEIVED NO BENEFIT

Plaintiffs' *quantum meruit* claim should be dismissed as a matter of law because (a) there were express agreements that spelled out all the rights and duties of the parties; (b) all the efforts and investments made by plaintiffs for their eleven projects were made for their own benefit with no expectation of being paid for "services;" (c) defendants expected to pay rent, as provided in the leases, if stores were built, but had no expectation of paying plaintiffs for the investments and efforts made by plaintiffs in their failed attempt to build the stores; (d) it is undisputed that defendants received no benefit from plaintiffs' failed efforts; and (e) *quantum meruit* cannot circumvent the statute of frauds.

In the absence of an express contract that covers the subject matter, a plaintiff, under limited circumstances, may resort to an action for a *quantum meruit* based on an implied contract, to seek compensation.  In such a case, a plaintiff must establish:

> (1) valuable services were rendered or materials furnished, (2) for person sought to be charged, (3) which services and materials were accepted by person sought to be charged, used and enjoyed by him, and (4) under such circumstances as [a] reasonably notified person sought to be

---

[1] Defendants have received indications that plaintiffs may move to strike this motion under LR 7(e)(3). Defendants do not read that rule to require leave of court to file this motion, because it is not being filed contemporaneously with any other dispositive motion.  Moreover, this motion is being filed by Rite Aid, and addresses three claims asserted only against Rite Aid.  Rite Aid did not move for summary judgment in the motion filed by Thrifty.  The summary judgment motions are directed at a number of discrete issues.  This case involves 12 plaintiffs, asserting 10 separate causes of action, seeking over $59 million in damages against two defendants.  It is appropriate that all causes of action be addressed at some point, and the earlier the better, for the sake of judicial and litigant economy.  If the local rule is deemed to apply to this motion, then Rite Aid hereby seeks leave of the Court to file it.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 1
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

1

2

> charged [would understand] that plaintiff, in performing such services
> was expected to be paid by person sought to be charged.

*Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash. App. 151, 159 (1991). The

doctrine does not apply where a sophisiticated real estate developer (who wants to be a

property owning landlord) and a retailer (who is willing to lease and pay rent, if and only

if, the Landlord builds a store) enter into comprehensive express contracts that precisely

allocate the risks and rewards of their respective businesses.

 Plaintiffs allege that for every project involved in this case there was an express

contract between the parties related to the subject matter. The law is well settled in both

Washington and California that a "party to a valid express contract may not bring an

action on an implied contract (quasi-contract) related to the same subject matter." DAVID

K. DEWOLF, 25 WASH. PRAC., *Contract Law & Practice* § 1.9 (2008-09); *see also Lance*

*Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal.App.4th 194, 203 (1996)("it is well

settled that an action based on an implied-in-fact or quasi-contract cannot lie where there

exists between the parties a valid express contract covering the same subject matter");

*Cal. Med. Ass'n v. Aetna*, 94 Cal.App. 4th 151, 173-74 (2001) (affirming dismissal of

quasi-contract claims because subject matter was governed by express contracts);

*Chandler v. Wash. Toll Bridge Auth.*, 17 Wash.2d 591, 604 (1943) ("A party to a valid

express contract is bound by the provisions of that contract, and may not disregard the

same and bring an action on an implied contract relating to the same matter"); *Moses*

*Lake Const. Co., Inc. v. Johnson*, 2006 WL 2147602 *5 (Wash. App. July 27, 2006)

(affirming dismissal of *quantum meruit* claim "[b]ecause the lessor-lessee relationship

arose from a valid written contract"). It is undisputed that the parties executed written

leases for ten of the projects. Dkt. No. Exs. 5, 7, 12, 15, 17, 21, 26, 28, 31 & 33. The

existence of these ten leases bars any claim for *quantum meruit*.[2]

---

[2] There was no lease signed for Poulsbo. Instead, plaintiffs allege that there was an express understanding that "[u]nder new Rite Aid criteria, a formal lease would be delivered, but only after a final pro forma was done when total project costs were more precisely known." Complaint at ¶ 3.96. Such an express

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 2
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

*Quantum meruit* requires that the services "be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them." *Johnson v. Nasi,* 50 Wash.2d 87, 91 (1957). Plaintiffs' claim for *quantum meruit* for "services rendered" is completely inconsistent with the nature, essence and purpose of the build-to-suit transactions between these parties.

The efforts and investments made by plaintiffs in seeking to develop these properties were not made for or on behalf of defendants; they were made for and on behalf of themselves with the hope and expectation of large rewards for the risks taken. Nicholson testified that he specifically did not want to be paid a fee for doing development work. Instead, Nicholson testified that he much preferred to own the land and assume the associated risks of seeking a greater award rather than working for someone else as a "fee developer."

> Q.   And the reason you call it "fee" is because Rite Aid took ownership of the fee; is that the idea?
> A.   No, it was because I got paid a fee. I was –
> Q.   Oh, you got paid a fee.
> A.   Yeah, I was compensated with a fee.
> Q.   Which is different from getting a return on your investment?
> A.   That's correct.
> Q.   So which approach did you prefer?
> A.   I would rather own real estate.
> Q.   So even though there is more risk involved in being the owner?
> A.   Yes, I would rather own real estate.
> Q.   And that's because your return is better than being stuck with just a fixed fee; is that fair?
> A.   Yeah. *I was a developer because I wanted to own the real estate. I just -- long-term. That was my goal is to own real estate, not to collect salaries or fee income.*
>
> *        *        *        *        *        *        *        *

agreement also would prevent a *quantum meruit* claim. *See, e.g., Wash. Ass'n of Child Care Agencies v. Thompson,* 34 Wash.App. 235, 238 (1983) (impermissible to seek damages in quasi-contract action where express agreement covers parties' dispute).

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10 - 3
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

> Q.  *So why did you want to own real estate?  Did you think real estate was going to get more valuable?*
>
> A.  *You get some income.  Over the course of the life of the loan, there is -- you know, the loan is paid down over a period of time, whether it is 20 or 25 years, and at some point you are going to own them free and clear and, you know, it was a way for me to get to a certain point where I wouldn't have to worry about things, you know, financially.*
>
> Q.  *So that really is the appeal for a developer. You get the bank's money to build it, you get the tenant's money to pay off the loan, and you end up owning -- you get a return on your investment while they are paying rent, and you own the land, and if the land goes up in value, you get the appreciation?*
>
> A.  *Yes.*
>
> Q.  And you get the paydown -- the equity buildup that comes from the debt being amortized by the lease payments; is that right?
>
> A.  Yes.
>
> Q.  So it's a very -- if it works, it's a great reward for the developer, and that's why people get into doing that; right?
>
> A.  Yes.

30(b)(6) Dep. at 34:5-23 & 35:1-24 (emphasis added).

The testimony establishes that plaintiffs' expectations were never to get a fee for services performed for defendants.  Plaintiffs' hope was to make a profit on their investment in land and buildings that they wanted to rent to Thrifty.  And they were willing to expend considerable funds and take substantial risks to do so.  But they were not making those efforts for defendants.  They were taking those risks for themselves. They could reasonably expect and hope for nothing other than what the leases provide to the Landlord, but only if the Landlord met with success in his real estate development efforts.  Defendants did not guarantee the success of their speculative efforts.  *Quantum meruit* claims are not designed to protect real estate investors from the risk of loss. Plaintiffs are not entitled to anything beyond what the leases provide.

Plaintiffs failed to deliver, a retail building for Thrifty to rent at any of the eleven sites.  Indeed, plaintiffs have admitted that defendants did not benefit from any of the failed projects.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 4
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

Q.	Okay. Now, you've alleged in your case that you've lost money that you invested in these projects; correct?

A.	Yes.

Q.	Do you have any -- *do you contend that Rite Aid received any of that money or that Rite Aid received any benefit from your losing money?*

A.	*No, I don't -- no, I don't believe so.*

30(b)(6) Dep. at 395:9-16 (emphasis added).  Plaintiffs' losses were unfortunate, but they were not defendants' gain.  Without evidence that defendants benefited from the plaintiffs' services, the *quantum meruit* claim fails.  *See, e.g., Dragt v. Dragt/DeTray, LLC*, 139 Wash. App. 560, 577 (2007), *review denied*, 163 Wash. 2d 1042 (2008) (*quantum meruit* permits the recovery of "the **reasonable value** of the benefit their services conferred upon the defendant"); *Bailie Commc'ns,* 61 Wash. App. at 159 (services must be accepted, used and enjoyed).

With respect to the Poulsbo project, plaintiffs testified that Rite Aid required plaintiff to prepare a final pro forma budget estimate for approval before Thrifty would consider agreeing to any lease.[3]  30(b)(6) Dep. at 97:5-98:17.  Plaintiff Poulsbo Holdings attempted to comply with the requirements, *id*. at 97:15 ("we were working on it"), but failed to ever prepare the final pro forma for defendants' consideration, *id*. at 98:4-17 ("not all of those steps were completed").  Consequently, the financial terms for any lease could not be considered, a rent could not be set and no lease was ever executed for Poulsbo.  Plaintiff could not reasonably expect defendants to pay for its failure to create a pro forma, and defendants did not expect to pay anything for that failure.

It has long been the law that a party may not seek recovery in *quantum meruit* in order to circumvent the statute of frauds.  *See Luschen v. Estate of Pilling*, 1999 WL 1054779 *3 (Wash. App. Nov. 22, 1999), *citing Cushing v. Monarch Timber Co.*, 75

---

[3] Under a build to suit lease arrangement, the rent to be set in the lease is determined by the costs incurred by the Landlord in building the building.  30(b)(6) Dep. at 333:11-25.  Intense negotiations over the costs to be allowed and the return on investment to be provided by the lease payments for each project.  Rent is a critical term in a long term lease; without a pro forma showing costs, there can be no agreement to lease.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 5
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

Wash. 678, 687 (1913) ("To permit a recovery upon the quantum meruit or upon an implied contract would be to defeat the purpose of the statute [of frauds] and supply, by implication, a contract which the statute expressly says may only be proven by written evidence").  Plaintiff Poulsbo Holdings seeks rent as *quantum meruit* damages as if there was a ten-year lease at the Poulsbo store site.  Miller Decl. Ex. B at 4 (Interrog. No. 11).  A multi-year lease agreement, however, must be in writing and executed to satisfy the statute of frauds, *see* Lease Claims Motion at 10-12, and any such obligation as an implied contract is unenforceable.

Based on the undisputed facts, the *quantum meruit* claim should be dismissed because: (1) the subject matter is covered by express agreements for each project; (2) plaintiffs were working on their own behalf, not providing any services to defendants; (3) defendants received no benefit from plaintiffs' efforts;  (4) there could be no reasonable expectation that defendants would pay plaintiffs for their unsuccessful development efforts; and (5) *quantum meruit* cannot circumvent the statute of frauds.

## II.  PLAINTIFFS' PROMISSORY ESTOPPEL CLAIM IS BARRED

Plaintiffs also have no valid promissory estoppel claim.  For ten projects, there are express leases, each of which bars application of  promissory estoppel.  For the Poulsbo store, it is undisputed that there is no promise that defendants failed to honor, and in any event, promissory estoppel cannot circumvent the statute of frauds.

The promises made by the parties are the ones set forth in the comprehensive written leases.  Each agreement contains a clear integration clause that provides that there are no other binding agreements between the parties. Dkt. No. 28. Exs. 5, 7, 12, 15, 17, 21, 26, 28, 31 & 33 at Art. 43.  Therefore, any claim for promissory estoppel that relies on promises not expressed in and inconsistent with the terms of the written leases fails. *See Emrich v. Connell*, 105 Wash.2d 551, 556 (1986)(terms of a parol agreement inconsistent with the terms included in the integrated written contract may not be proved

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 6
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

by extrinsic evidence); *Gerdlund v. Elect. Dispensers Int'l*, 190 Cal.App.3d 263, 271 (1987)(parol evidence inadmissible to prove the existence of a separate oral agreement as to any matter inconsistent with express terms of integrated written contract).

There can be no admissible evidence of *ex contract* promises in this case. Accordingly, the cause of action for promissory estoppel adds nothing to the breach of express contract cause of action.  Any claim for promissory estoppel that relies on promises not expressed in the written agreements fails.[4]

A claim for promissory estoppels requires: "(1) a promise which (2) the promisor should reasonably expect to cause the promisee to change position and (3) which does cause the promisee to change position (4) justifiably relying on the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *King v. Riveland*, 125 Wash.2d 500, 506 (1994); *see also Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal.App.4th 1001, 1016 (2012)(under California law, the elements are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance").  Without evidence of an *ex contract* promise upon which the plaintiffs justifiably relied to their detriment, the claim fails as a matter of law.

A plaintiff cannot state a claim for promissory estoppel when there is a valid contract covering the transaction; instead, the claim must be pleaded as one for breach of the bargained-for contract.  *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App. 4th 256, 275 (2011) (holding that where the alleged promise was contained in a valid contract, plaintiff cannot state a claim for promissory estoppel); *Greaves v. Med. Imaging Sys., Inc.,* 124 Wash.2d 389, 398 (1994) ("If the promisee's performance was requested at

---

[4] Defendants deny any promises made outside the contracts, but even if there were any, the integration clauses make clear that plaintiffs were not entitled to justifiably rely on any such promises not set forth in a written amendment to the leases.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 7
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable").  The very purpose of promissory estoppel is "to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange."  *Greaves,* 124 Wash.2d at 398.  The promises made by Thrifty in the leases, and by Rite Aid in its guarantees, are limited to their express terms.  Plaintiffs do not attack the validity of any agreement at issue.  Thus, with respect to all projects except Poulsbo, the promissory estoppel claim fails because the rights and duties of the parties were agreed to in the leases.

For the Poulsbo project, to the extent that the alleged promise was an oral lease agreement, the promissory estoppel claim is barred by the statute of frauds.  Washington courts  have repeatedly rejected promissory estoppel as a way for circumventing the statute of frauds.  *See, e.g., Greaves,* 124 Wash.2d at 398–401 (reversing court of appeals and reinstating grant of summary because  claim of promissory estoppel cannot "defeat application of the statute of frauds"); *Lige Dickson Co. v. Union Oil Co.*, 96 Wash.2d 291, 299 (1981) ("promissory estoppel cannot be used to overcome the statute of frauds").  The Court should reject any similar attempt by plaintiffs.

To the extent that the alleged promise was that Thrifty promised to consider a lease after plaintiff Poulsbo Holdings submitted a final pro forma for approval, the claim still fails.  The admitted facts are that Plaintiff never provided the final pro forma or completed any of the other prerequisites necessary before Thrifty had any obligation to consider, let alone execute, a written lease.  30(b)(6) Dep. at 97:5-98:17.  Because of plaintiff's own nonperformance, there is no actionable promise that defendants failed to honor or that the plaintiff can request the Court to equitably enforce.

Promissory estoppel cannot be used by the plaintiffs in this case to circumvent the extensive negotatied leases entered into by the parties. Nor does it provide a basis for damages for the failed Poulsbo project.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 8
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

### III.    IT IS UNDISPUTED THAT RITE AID WAS NOT NICHOLSON'S PARTNER AND THEREFORE OWED HIM NO FIDUCIARY DUTIES

In an effort to create fiduciary duties, Nicholson alleges that he and Rite Aid created a "partnership" in "a lawful business" and agreed "to divide the profits and bear the losses in certain proportions," and therefore Rite Aid owed Nicholson fiduciary duties Complaint ¶¶ 8.2, 8.3.  But the undisputed evidence establishes that Nicholson did not share profits with Rite Aid and was not Rite Aid's partner.

"A fiduciary is a person with a duty to act *primarily for the benefit of another.*" *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash.App. 732, 741 (1997). "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal."  *Wolf v. Superior Court*, 107 Cal.App.4th 25, 30 (2003); *see also Jameson v. Desta*, 215 Cal.App.4th 1144, 1164 (2013) (providing elements of a course of action for breach of fiduciary duty).

"An express or implied contract is essential to a partnership relationship and must contemplate a common venture uniting labor, skill or property of the partners for the purpose of engaging in lawful commerce for the benefit of all the parties, a sharing of profits and losses, and joint right of control of its affairs."  *Cusick v. Phillippi,* 42 Wash.App. 147, 154 (1985) (refusing to find partnership where co-tenancy agreement clearly articulated parties' relationship to be one of co-tenants, not partners); *see also Constans v. Ross*, 106 Cal.App.2d 381, 386 (1951)("Ordinarily the existence of a partnership is evidenced by the right of the respective parties to participate in the profits and losses and in the management of the business").  Without an agreement to share in the profits <u>and</u> losses of the business venture, there is no partnership.  *See, e.g., Bernhart v. Danard*, 2011 WL 765672 *2 (Wash. App. February 28, 2011) (upholding trial court's finding that there was no partnership because there "was no agreement amongst the parties to share losses"); *Honarkhah v. Nelson*, 2004 WL 798702 *3 (Wash. App. April

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 9
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

12, 2004) (upholding trial court's determination that partnership claim failed as a matter of law when there was no agreement between the parties to share profits).  When the parties have entered into a written agreement, whether the parties intended to enter into a partnership should be determined chiefly from the terms of the writing.  *See Constans*, 106 Cal. App. 2d at 386.

Nicholson has admitted there was no agreement between the parties to share in any profits or losses for any project.  30(b)(6) Dep. at 128:10-129:16.  Instead, in each of the leases, the plaintiff entities agreed to build a retail building at an agreed upon rent to be paid by Thrifty.  Nicholson and his companies assumed all of the losses and received all of the profits from the acquisition of land and the construction of the retail space:

> Q.   All right. And you as a real estate developer were going to have profit or losses based on what the real estate did; right?
> A.   Yes.
> Q.   And [Rite Aid was] not participating in those profits and losses, were they?
> A.   Well, I -- you know, in the operation of a finished store, no, they were not participating in the profits or losses of that finished project

*Id*. at 128:15-23.  For their part, Thrifty and Rite Aid received all of the profits and assumed all of the losses for the operation of the Rite Aid pharmacies in plaintiffs' buildings:

> Q.   Okay. Other than [rent], you had no participation in whether the stores made money or lost money as a retail pharmacy?
> A.   I did not -- I was not their partner in the operation of a retail store.

*Id*. at 128:10-14.  Given the parties' arrangement, Nicholson understood that the parties did not form a partnership:

> Q.   But you knew you weren't legal partners, didn't you?
> A.   No, yeah, they were not part of my partnership or – of the project.

*Id*. at 129:-14-16.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 10
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

1    In sum, Nicholson assumed all the risk and retained all the profits, plus all the

2  potential for upside appreciation in the value of the land and buildings, associated with

3  the construction of each retail building. *Id*. at 128:15-23.  Rite Aid and Thrifty assumed

4  all the risk and retained all the profits from the operation of a retail store at each location.

5  *Id*. at 128:13-14.  Without evidence of an agreement between the parties to share in the

6  profits and losses for each project, there cannot be a partnership, and Nicholson's breach

7  of fiduciary duty claim fails.[5]

8             **IV.  NECESSARY ELEMENTS FOR PLAINTIFFS'**
                        **CPA CLAIM ARE LACKING**
9

10    Plaintiffs assert that the termination of the leases violated the Washington

11  Consumer Protection Act.  As a matter of law, such acts were not unfair or deceptive.

12  Nor is there any public interest impact in this multimillion dollar dispute between very

13  experienced parties over eleven store projects.

14    There are five elements of a private claim under Washington's Consumer

15  Protection Act (CPA): (1) an unfair or deceptive act or practice; (2) which occurs in trade

16  or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff

17  in his or her business or property; and (5) which injury is causally linked to the unfair or

18  deceptive act.  *See Siver v. CitiMortgage, Inc.*, 830 F. Supp. 2d 1194, 1201 (W.D. Wash.

19  2011) (dismissing CPA claim pursuant to Rule 12(b)(6) where plaintiff failed to allege

20  any unfair or deceptive act or any public impact); *Minnick v. Clearwire US, LLC*, 683

21

22  ─────────────────
    [5] To the extent that Nicholson himself claims a fiduciary duty owed to him under the leases, the claim
    fails for many reasons.  First, Nicholson is not a party to any of the leases.  Second, Rite Aid is not a party
23  to any of the leases but instead merely agreed to act as Thrifty's guarantor.  Moreover, "there is no
    fiduciary relation in the case of debt or other contract duty."  *Gonsalves v. Hodgson*, 38 Cal.2d 91, 98
24  (1951) (refusing to find a fiduciary duty between commercial parties to a contract negotiated at arm's-
    length); *see also Waverly Productions, Inc. v. RKO Gen., Inc.*, 217 Cal. App. 2d 721, 732 (1963) ("A
25  mere contract or a debt does not constitute a trust or create a fiduciary relationship").  That is because
    "[t]here is no rule that parties to a contract may not act for their own interest during the execution of the
26  contract. They have no duty of loyal representation of the opposing party in the relationship."  *Gonsalves*,
    38 Cal.2d at 98.  Likewise, Rite Aid's only contractual obligation to any of the plaintiffs are the
27  guarantees and they plainly provide no basis for the imposition of a fiduciary duty.

Rite Aid's Motion for Sum. Judg. Dismissing             **ROHDE & VAN KAMPEN** PLLC
Plaintiffs' Causes of Action 3 through 10  - 11              1001 Fourth Avenue, Suite 4050
12-cv-01121 RSL                                              Seattle, Washington 98154-1000
                                                                 Tel: (206) 386-7353
                                                                 Fax: (206) 405-2825

F.Supp.2d 1179, 1186 (W.D. Wash. 2010) (dismissing CPA claim where plaintiffs failed to identify a cognizable unfair trade practice). The purpose of the Consumer Protection Act is to protect the public from acts or practices which are injurious to consumers, not to provide an additional remedy for private wrongs that do not affect the public generally. *See Lightfoot v. MacDonald,* 86 Wash.2d 331, 338-39 (1976) (affirming dismissal of CPA claim for failure to show that defendant's breach of contract caused damage to anyone but the plaintiff). A breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. *Id.* at 334.

### A. LEASE TERMINATIONS IN RESPONSE TO A FAILURE TO PERFORM IS NEITHER UNFAIR NOR DECEPTIVE

Plaintiffs contend that defendants' termination of the lease agreements was unfair and deceptive. Complaint at ¶ 9.2 ("Defendants wrongfully cancelled agreements with other Preferred Developers in the same or similar circumstances as those alleged here"). But plaintiffs concede that in terminating the leases, "Rite Aid simply made a business decision that given the economic climate and its effect on Rite Aid business, it would not incur the cost of developing the Nicholson projects."[6] Complaint ¶ 3.51. Defendants' actions taken in conformity with the express terms of the leases and predicated upon legitimate business concerns cannot constitute a violation of the CPA. *See, e.g., Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38, 54 (1987) ("[w]here conduct is motivated by legitimate business concerns, there can be no violation of RCW 19.86"); *State v. Black,* 100 Wash.2d 793, 803 (1984) (actions "motivated by legitimate business concerns … were not the kind of conduct within the scope of RCW 19.86.020"); RCW 19.86.920 ("this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business").

---

[6] In a build to suit project, the "costs of development" are borne by the Landlord, not the Tenant. Tenant's only financial obligation is to pay rent if the developer succeeds. 30(b)(6) Dep. at 21:2-23:10. Tenants' inability to finance and bear those costs are what caused the problem here.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10 - 12
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

In addition, to being unfair or deceptive, the conduct in question must have the "*capacity* to deceive a substantial portion of the public." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 785 (1986).  None of defendants' alleged actions in terminating the ten leases, or in Thrifty not executing the Poulsbo lease, meet that standard when there is no likelihood that there are or will be additional plaintiffs injured in the same fashion.  *Id.* at 791.  *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007)(affirming dismissal of CPA claim because a scheme marketed to a "select audience" of millionaires lacks the capacity to deceive a substantial portion of the public); *Malone v. Clark Nuber, P.S.*, 2008 WL 2545069 *10 (W.D. Wash. July 23, 2008) (Rule 12(b)(6) dismissal of CPA claim where plaintiff could not establish that the wrongful tax shelter scheme was directed to more than a few multimillionaires); *Burns v. McClinton,* 135 Wash.App. 285, 306 (2006) (reversing trial court on CPA claim because little likelihood of repetition when parties' relationship was "unusual").  There is no evidence that there is anyone else – much less "a substantial portion of the public" – that had the unique dealings of these parties.

Plaintiffs' allegation, "on information and belief," that other out-of-state developers might have had store leases terminated by defendants, Complaint at ¶ 9.2, does not cure the plaintiffs' deficiency for at least two reasons.  First, "'[m]ere speculation that an alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public is insufficient to survive summary judgment' on a CPA claim."  *Brown v. Brown,* 157 Wash.App. 803, 816-17 (2010); *see also Burns,* 135 Wash.App. at 306 (reversing trial court on CPA claim because can't infer injuries to others).  Second, the CPA is directed to the commerce of Washington, and for the protection of its consumers, not those in other states governed by different laws.  RCW 19.86.010(2)("any commerce directly or indirectly affecting the people of the state of Washington").  There is no actionable unfair or deceptive act.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 13
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

1   "Where there is no factual dispute as to what each party did, 'whether the conduct

2   constitutes an unfair or deceptive act can be decided ... as a question of law.'"  *Minnick,*

3   683 F.Supp.2d at 1186, *quoting Indoor Billboard/Wash., Inc. v. Integra Telecom of*

4   *Wash., Inc.,* 162 Wash.2d 59, 73 (2007).  There is no question that the termination of the

5   store leases, in accordance with the lease provisions, for legitimate business reasons, was

6   not unfair or deceptive.  For this reason alone, the CPA count should be dismissed.

7   ### B.   THIS IS A UNIQUE DISPUTE WITHOUT PUBLIC IMPACT

8   The CPA claim also fails because there is no evidence that Thrifty's alleged

9   breach of its leases had any impact on the public.  "[I]t is the likelihood that additional

10  plaintiffs have been or will be injured in exactly the same fashion that changes a factual

11  pattern from a private dispute to one that affects the public interest." *Hangman Ridge,*

12  105 Wash.2d at 790.  To demonstrate a public interest in the dispute, there "'must be

13  shown a real and substantial potential for repetition, as opposed to a hypothetical

14  possibility of an isolated unfair or deceptive act's being repeated.'" *Michael v. Mosquera-*

15  *Lacy*, 165 Wash.2d 595, 604-05 (2009) (quotation omitted) (reversing court of appeals

16  because "[t]here is no likelihood or any real or substantial potential that other people will

17  be injured in the same way [plaintiff] was injured").  Instead, plaintiffs merely assert that

18  an unspecified fraction of the 100 or so developers that defendants work with nationwide

19  have had their lease agreements wrongfully terminated.  Complaint at ¶ 9.2.  Even if the

20  allegation were accepted as true, this does not meet the public interest requirement

21  because there is no "substantial potential for repetition" in Washington when the entire

22  nationwide universe is a fraction of 100 sophisticated out-of-state commercial

23  developers.

24  This is merely a private commercial contract dispute between sophisticated

25  parties.  Like in *Goodyear,* Nicholson "was an experienced businessman who had dealt

26  with [defendant] for years" and other similarly situated persons dealing with defendant

27

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 14
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

were "not representative of bargainers vulnerable to exploitation."  86 Wash.App. at 745; *see also Pacific Nw. Life Ins. Co. v. Turnbull*, 51 Wash.App. 692, 703 (1988) (affirming dismissal of CPA claim because plaintiff "had sufficient sophistication to remove them from the class of bargainers subject to exploitation").  Nicholson had extensive business experience, owned many companies, and regularly used attorneys to negotiate his leases and to handle disputes.  30(b)(6) Dep. at 28:6-21, 31:4-14 & 46:16-24.  The public interest is not implicated in a private transaction where plaintiffs "had a history of business experience…were sole shareholders in a closely held corporation, and [had] retained an attorney and an accountant on a regular basis."  *Hangman Ridge*, 105 Wash.2d at 794 (reversing trial court).  Indeed, Nicholson was very experienced with the very build-to-suit leases that are central to his claims, 30(b)(6) Dep. at 24:3-26:6, and therefore cannot demonstrate a public interest in this dispute.  *See Reeves v. Teuscher*, 881 F.2d 1495, 1503 (9th Cir. 1989) (plaintiff "had sufficient experience and sophistication to protect himself" when "he had ten to 15 years of experience selling and developing residential and commercial real estate").

There was nothing unfair or deceptive about the defendants' conduct in following the parties' leases, and such conduct could never deceive a substantial portion of the public.  This dispute between sophisticated and experienced business interests over a series of arm's-length leases does not impact the public interest.  Summary judgment should be granted on the CPA count.

## V.  PLAINTIFFS DO NOT HAVE A VIABLE CLAIM FOR UNFAIR COMPETITION FOR THE CALIFORNIA PROJECTS

Plaintiffs seek damages under California Civil Code 17200, which is California's Unfair Competition Law.  Complaint ¶ ¶ 10.2, 10.3.  However, the only monetary remedy for violations of this provision is digorgement, and there is no evidence that the defendants ever received any profits to disgorge from these eleven projects.  Moreover,

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 15
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

there is no evidence that the defendants committed any unfair or fraudulent acts.  The claim should be dismissed.

Section 17200 provides:

> As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the Business and Professions Code].

While the scope of conduct covered by section 17200 appears broad, its remedies are limited, and damages cannot be recovered.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 179-80 (1999) ("Plaintiffs may not receive damages"); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992) ("only nonpunitive monetary relief available under the Unfair Business Practices Act is the disgorgement of money that has been wrongfully obtained").  The applicable remedy provision expressly limits monetary relief to restitution and disgorgement:  "The court may make such orders or judgments … as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Cal Civ. Code § 17203.

Plaintiffs have no claims that fall within the remedies available for violations of 17200.  They have not sought injunctive relief or disgorgement.  *See* Complaint at 30-31. Nor can plaintiffs claim that "lost opportunity" damages are the same as disgorgement. "Compensation for a lost business opportunity is a measure of damages and not restitution," and thus not recoverable under § 17203.  *MAI Sys. Corp. v. UIPS,* 856 F. Supp. 538, 542 (N.D. Cal. 1994) (dismissing damages claim as a matter of law under Rule 12(b)(6)); *see also Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1151 (2003) (allowing damages under the UCL "would enable [a plaintiff] to obtain tort damages while bypassing the burden of proving the elements of liability" for traditional tort claims).  Moreover, even if the plaintiffs had pled a disgorgement claim, it is

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 16
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

undisputed that defendants never profited from the plaintiffs' failed projects, which prevents a disgorgement remedy.  30(b)(6) Dep. at 395:13-16.

The "unfair or fraudulent" element of a Section 17200 claim is not met in this case. *See Roots Ready v. The Gap, Inc*., 2010 WL 4823824 *2 (9th Cir. Nov. 29, 2010) (affirming summary judgment dismissing section 17200 claim because defendant's termination of plaintiff's contract "was permitted by the plain terms of the contract, and the 'unfairness' prong of section 17200 'does not give the courts a general license to review the fairness of contracts'"); quoting *South Bay Chevrolet v. Gen. Motors Acceptance Corp*., 72 Cal.App.4th 861, 887 (1999)(affirming holding that action authorized by parties' commercial contract was not unfair thus did not violate Section 17200); *see also Wang & Wang LLP v. Bando Do Brasil, S.A.,* 2007 WL 915232 *4 (E.D.Cal. 2007) (holding that a breach of contract, standing alone, is an insufficient basis for a § 17200 claim).  Thrifty's termination of each lease, after plaintiffs failed to begin construction on a single store before the delivery deadlines, was neither unfair nor fraudulent.  Instead, Thrifty "simply made a business decision," Complaint ¶3.51, to exercise its right to terminate the leases in accordance with their terms.  There is nothing "unfair" in such actions.

In conclusion, summary dismissal of the § 17200 should be granted for two reasons – the unavailability of a damage remedy and the lack of evidence that defendants committed  any unfair or fraudulent conduct.

## VI.   THERE ARE NO GROUNDS FOR PLAINTIFFS' PUNITIVE DAMAGES CLAIM

The plaintiffs assert a claim against Thrifty and Rite Aid under California Civil Code §  3294 for punitive damages.[7]  Complaint at ¶ 11.2.

---

[7] This claim can only concern the three store leases governed by California law (Concord, Sunnyvale and San Pablo) because punitive damages are not permitted under Washington law.  *See Maki v. Aluminum Bldg. Prod.,* 73 Wash.2d 23, 25 (1968) ("the doctrine of punitive damages is unsound in principle and that such damages cannot be recovered in this jurisdiction, absent statutory authorization").

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 17
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

> In an action for the breach of an obligation *not arising from contract*, where it is proven by *clear and convincing evidence* that the defendant has been guilty of *oppression, fraud, or malice*, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Calif. Civ. Code § 3294(a) (emphasis added).  The claim for punitive damages fails as a matter of law for a number of reasons.

For each California store site at issue, Thrifty's and Rite Aid's obligations were set forth in a comprehensive lease and guarantee.  Defendants had no obligations outside the written leases and guarantees, and the statute by its terms is inapplicable.  Even when there are non-contract claims alleged, a claim under § 3294 fails if the "crux" of the complaint arises from a contract between the parties.  *See, e.g., Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1308-09 (S.D. Cal. 2003) (granting motion to dismiss on § 3294 claim even though complaint alleged tort cause of action because the crux of the complaint was based on a contract).

Second, similar to a fraud claim, California requires that the specific facts constituting malice, wrongful motive or fraud be pleaded.  *Cyrus v. Haveson*, 65 Cal. App. 3d 306, 316-17 (1976) ("To support punitive damages, the complaint…must allege ultimate facts of the defendant's oppression, fraud, or malice").  California courts have long held that conclusory allegations of malice, similar to those made by the plaintiffs in this case, are insufficient to state a cause of action for punitive damages.  *Id*.  Without specific allegations of intentional wrongful conduct – as opposed to negligent or mistaken actions –  or a wrongful motive, a claim for punitive damages fails as a matter of law.  Plaintiffs have failed to plead any specific facts of intentional wrongful conduct, wrongful motive or fraud.  Plaintiffs' claim for punitive damages should be dismissed as a matter of law.

Summary judgment on the issue of punitive damages is proper when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud,

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 18
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

or oppression.  *See Bookhamer v. Sunbeam Prod., Inc.*, 913 F.Supp.2d 809, 821 (N.D. Cal. 2012) (granting summary judgment where plaintiffs failed to present clear and convincing evidence that defendant acted with the requisite malice for punitive damages). Accidentally harmful conduct cannot provide the basis for punitive damages; at a minimum, there must be conduct done with willful and conscious disregard of the rights or safety of others or despicable conduct done in conscious disregard of a person's rights. *See Buell-Wilson v. Ford Motor Co.*, 141 Cal. App. 4th 525, 564 (2006).  As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms.  *Badgett v. Security State Bank*, 116 Wash.2d 563, 570 (1991); *see also Campbell v. Cal-Gard Sur. Serv., Inc.*, 62 Cal. App. 4th 563, 570 (1998) (violation of duty of good faith and fair dealing does not automatically support award of punitive damages; rather, there needs to be clear and convincing evidence that defendant is guilty of oppression, fraud, or malice).

There is no clear and convincing evidence of malice, fraud or oppression on the part of Thrifty or Rite Aid.  To the contrary, plaintiffs acknowledged that the people dealt with at Rite Aid and Thrifty were "honorable people."  30(b)(6) Dep. at 210:5-14 & 212:18-21.  Moreover, plaintiffs admitted that defendants, although having no obligation to help, frequently offered assistance and advice to help plaintiffs comply with their contractual obligations.  *Id*. at 169:14-18 (admitting that defendants were helping plaintiffs); *id*. at 179:4-181:18 (admitting that defendants offered to help plaintiffs even though defendants had no obligation to help).  Without evidence of oppression, fraud or malice, the claim fails.

Because Thrifty did nothing more than assert its rights under the leases and there is no allegation nor evidence of malice or fraud on the part of Thrifty or Rite Aid,[8] summary judgment should be granted dismissing plaintiffs' claim for punitive damages.

---

[8] To state a claim of fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(2)(b); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 19
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

## VII.   PLAINTIFFS' CANNOT CLAIM RITE AID TORTIOUSLY INTERFERED WITH ITS SUBSIDIARY'S LEASES

Plaintiffs assert that Rite Aid tortiously interfered with the leases by causing its wholly-owned subsidiary, Thrifty, to breach the leases.  Complaint at 29-30.  This claim fails because, as shown in Thrifty's Lease Claims Motion, there was no actionable breach of the leases by Thrifty.  It fails also because a corporate parent cannot be held liable for tortious interference with its subsidiary's contracts when their financial interests are aligned or where the parent acted to protect its own legitimate interests.

A  claim for tortious  interference requires proof of five elements:

(1)    the existence of a valid contractual relationship or business expectancy;

(2)    knowledge of the relationship or expectancy on the part of the interferor;

(3)    intentional interference inducing or causing a breach or termination of the relationship or expectancy;

(4)    resultant damage to the party whose relationship or expectancy has been disrupted; and

(5)    that the defendant had a duty of noninterference, *i.e.,* that defendant interfered for an improper purpose or used improper means.

*See Kieburtz & Associates, Inc. v. Rehn*, 68 Wash.App. 260, 267 (1992), *citing Pleas v. Seattle,* 112 Wash.2d 794, 800 (1989).  *See also Marsh v. Anesthesia Serv. Med. Group, Inc.*, 200 Cal.App.4th 480, 504 (2011) (California law is same).  As of the time of Thrifty's alleged lease breaches,[9] there is no evidence to establish any of these essential elements of a claim for tortious interference.  Without  evidence of even one element, plaintiffs' claims fail as a matter of law and summary judgment is appropriate.  *See Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111 Wash. App. 361, 372-73 (2002)

---

(dismissal of fraud claim appropriate under Rule 9(b), where complaint fails to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

[9] Plaintiffs alleged that Thrifty breached the Oakley and San Pablo leases when it sent the termination letters.  Complaint at ¶¶ 3.49 & 3.70.  Plaintiffs also contend that Thrifty anticipatorily repudiated the other leases during the February and May 2010 settlement discussions.  *Id*. at ¶¶ 3.52 & 3.54.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 20
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

(affirming summary dismissal of tortious interference claim where plaintiff failed to present evidence to establish the fifth element).

Plaintiffs contend that "Rite Aid improperly and wrongfully induced and/or caused Thrifty Payless to breach its contracts and/or business expectancies." Complaint at ¶12.3. But as established in Thrifty's Lease Claim Motion, there is no evidence that Thrifty breached any provision of the executed lease agreements before plaintiffs each failed to obtain the necessary permits or financing, much less begin construction on a single retail store prior to the deadlines in the leases. Dkt. No. 25 at 13-18. For this reason alone, the tortious interference claim fails.

It is well settled that a corporate parent cannot be held liable for tortious interference with its subsidiary's contracts when their financial interests are aligned or where the parent acted to protect its own legitimate interests. *See, e.g., Hansen*, 111 Wash.App. at 372-73 (affirming summary judgment that parent corporation not liable for tortious interference with its subsidiary's contract when parent and subsidiary's financial interests are aligned); *Chicago Title Ins. Co. v. Great W. Finan. Corp.,* 69 Cal.2d 305, 319 (1968) (no tortious interference when parent corporation, "merely to protect his financial interest or promote the other's welfare" induces subsidiary "not to enter a business relationship with a third party")*; Henri v. Texaco, Inc.,* 1989 WL 407295 *6 (C.D. Cal. Aug. 7, 1989) (granting summary judgment because under California law parent not liable for tortious interference with subsidiary); *see also Nation v. Am. Capital Ltd.,* 682 F.3d 648, 652-54 (7th Cir. 2012) (affirming summary judgment that majority owner had legitimate interests in corporation so its interference was lawful and not tortious); *Deauville Corp. v. Federated Dep't Stores, Inc.,* 756 F.2d 1183, 1196-97 (5th Cir. 1985) (affirming directed verdict that no tortious interference by corporate affiliates). Thrifty is a wholly-owned subsidiary of Rite Aid. Complaint at ¶ 1.14. Thrifty entered into the lease agreements with each plaintiff to take effect after timely construction of a

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 21
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

store.  Although not a party to any lease agreement, Rite Aid executed a guarantee for each lease making it potentially liable for a breach by Thrifty.  Miller Decl. Ex. A.  Thus, with respect to each lease agreement, Thrifty and Rite Aid's financial interests were unquestionably aligned.  Rite Aid, therefore, cannot be liable for tortiously interfering with Thrifty's leases.

Finally, the claim fails because there is no evidence that Rite Aid acted with an improper purpose or used improper means in allegedly inducing Thrifty to terminate the lease agreements after plaintiffs failed to perform.  Even plaintiffs admit that "Rite Aid simply made a business decision that given the economic climate and its effect on Rite Aid business, it would not incur the costs of developing the [plaintiffs'] projects."  Complaint at ¶ 3.51.[10]  But "[e]xercising in good faith one's legal interests is not improper interference."  *Leingang v. Pierce Co. Med. Bureau, Inc.*, 131 Wash.2d 133, 157 (1997) (trial court properly granted summary judgment dismissing tortious interference claim where medical insurer merely acted to protect its own interests); *see also Brown v. Safeway Stores, Inc.,*  94 Wash.2d 359, 375 (1980) ("'(o)ne who in good faith asserts a legally protected interest of his own which he believes may be impaired by the performance of a proposed transaction is not guilty of tortious interference'"); *Tacoma Auto Mall, Inc. v. Nissan N. America, Inc.*, 169 Wash.App. 111, 132-34 (2012) (reversing and order summary dismissal of tortious interference claim because defendant acting to protect its own interests).  With their admission that Rite Aid's only "interference" was a reasonable business decision driven by the Great Recession – rather than an inherently wrongful act for an improper purpose – the plaintiffs' tortious interference claim cannot proceed.  *See, e.g., Marsh*, 200 Cal.App.4th at 507 (affirming dismissal because the alleged conduct "f[e]ll within the sphere of lawful administrative behavior, rather than

---

[10] Given the "build to suit" nature of the transactions, it would be more accurate to say that Rite Aid made a business decision not to extend delivery dates and incur the costs of  renting and operating new stores, assuming developer succeeded in building the stores.  Under the leases, the costs of "developing the projects" were always to be borne by the developer, not by tenant.

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 22
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

any tortious interference or predatory economic behavior"); *Goodyear*, 86 Wash.App. at 745-46 (affirming summary judgment on tortious interference claim because defendant's actions were in compliance with express contract terms and therefore not improper); *Singer Credit Corp. v. Mercer Island Masonry Inc*., 13 Wash.App. 877, 884 (1975) (affirming dismissal of tortious interference claim when defendant refused to consent to an arrangement in order to protect own interests).

In a case with similar facts, a federal court applying California law dismissed a tortious interference claim asserting that a parent corporation had induced its subsidiary's contract breach.  *Stonebrae, LP v. Toll Bros, Inc.,* 2008 WL 2157000 at *2 (N.D. Cal. May 21, 2008).  In *Stonebrae*, like the allegations in the Nicholson complaint, the plaintiff had alleged that "in response to is severely deteriorating financial condition, Defendant Toll [ Parent] sought to reduce the contractual liabilities on its consolidated financial statements, such as that represented by the Village B Purchase Agreement, and directed its subsidiaries and affiliates to take steps to do so."  *Id*. at *6; *cf*. Complaint at ¶ 3.51.  The court held that such allegations established that the parent corporation's interference was justified and granted a motion to dismiss the tortious interference claim against the parent corporation.  *Stonebrae*, 2008 WL 2157000 at *8.

Rite Aid cannot be liable for tortious interference with its subsidiary's leases, or prospective lease, because – as alleged by plaintiffs –it determined it would not approve additional extensions to store delivery dates.  This was a legitimate business decision and not wrongful interference.  Summary judgment on the tortious interference claim is appropriate.

## VIII.  PLAINTIFFS' CLAIM ON THE LEASE GUARANTEES FAILS

Plaintiffs' tenth cause of action alleges that Rite Aid is liable on its guaranty of Thrifty's obligations under the ten leases.  Complaint at ¶13.2.  As discussed in Thrifty's Lease Claims Motion, Thrifty had no obligations to plaintiffs under the leases that were

Rite Aid's Motion for Sum. Judg. Dismissing
Plaintiffs' Causes of Action 3 through 10  - 23
12-cv-01121 RSL

**ROHDE & VAN KAMPEN** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
Tel: (206) 386-7353
Fax: (206) 405-2825

1  validly terminated according to their terms.  Without Thrifty having liability on the

2  leases, there can be no liability attributed to its guarantor.  *See* Miller Decl. Ex. A.  A

3  guarantor is not liable if the principal obligor is not liable.  *Wilson Court Ltd. Partnership*

4  *v. Tony Maroni's, Inc.*, 134 Wash.2d 692, 708 (1998) (guarantor "may be called upon to

5  perform once the primary obligor has failed to perform").  Therefore, this tenth cause of

6  action against Rite Aid should be dismissed as a matter of law.

7  ## CONCLUSION

8  The law, and the undisputed facts, demonstrate that plaintiffs' third through tenth

9  causes of action should be summarily dismissed.

10  DATED this 19th day of September, 2013.

11  ROHDE & VAN KAMPEN PLLC

12  /s/ Delbert D. Miller

13

14  Delbert D. Miller, WSBA No. 1154
   *dmiller@rvk-law.com*

15  Al Van Kampen, WSBA No. 13670
   *avk@rvk-law.com*

16  **Attorneys for Defendant Rite Aid Corporation**

17  ## Declaration of Service

18  I hereby certify that on this day, I electronically filed the foregoing with the Clerk
   of the Court using the CM/ECF system which will send notification of such filing to the

19  following:

20  Jeffrey M. Thomas
   Michael R. Rosenberger

21  1001 Fourth Avenue, Suite 4000
   Seattle, WA 98154

22  *jthomas@gordontilden.com*
   *mrosenberger@gordontilden.com*

23  *Attorneys for Plaintiffs*

   DATED this 19th day of September, 2013.

24

25

26  E. Birch Frost

27
   Rite Aid's Motion for Sum. Judg. Dismissing
   Plaintiffs' Causes of Action 3 through 10  - 24
   12-cv-01121 RSL

   **ROHDE & VAN KAMPEN** PLLC
   1001 Fourth Avenue, Suite 4050
   Seattle, Washington 98154-1000
   Tel: (206) 386-7353
   Fax: (206) 405-2825