1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
BRENT NICHOLSON, *et al.*,              )
                                        )    No. C12-1121RSL
                    Plaintiffs,         )
                                        )    ORDER GRANTING IN PART
          v.                            )    RITE AID'S MOTION FOR
                                        )    SUMMARY JUDGMENT
                                        )
THRIFTY PAYLESS, INC., *et al.*,        )
                                        )
                    Defendants.         )
_____  )

        This matter comes before the Court on "Rite Aid's Motion for Summary Judgment

Dismissing Plaintiffs' Third Through Tenth Causes of Action." Dkt. # 31. Summary judgment

is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there

is no genuine dispute as to any material fact that would preclude the entry of judgment as a

matter of law. L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012).

The party seeking summary dismissal of the case "bears the initial responsibility of informing

the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986))

and identifying those portions of the materials in the record that show the absence of a genuine

issue of material fact (Fed. R. Civ. P. 56(c)(1)). Once the moving party has satisfied its burden,

it is entitled to summary judgment if the non-moving party fails to identify specific factual

disputes that must be resolved at trial. Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055,

1059 (9th Cir. 2012). The mere existence of a scintilla of evidence in support of the non-moving

ORDER GRANTING IN PART RITE AID'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  party's position will not preclude summary judgment, however, unless a reasonable jury viewing

2  the evidence in the light most favorable to the non-moving party could return a verdict in its

3  favor. U.S. v. Arango, 670 F.3d 988, 992 (9th Cir. 2012).

4          Having reviewed the memoranda, declarations, and exhibits submitted by the

5  parties in the light most favorable to plaintiffs and having heard the arguments of counsel, the

6  Court finds as follows:

7  **A. Quantum Meruit (Third Cause of Action)**

8          A party to an express contract may not bring an action based on an implied or

9  quasi-contract related to the same matter. Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591,

10 604 (1943); Lance Camper Mfg. Corp. v. Republic Indem. Co., 51 Cal. Rptr.2d 622, 628 (Cal.

11 App. 1996).   Plaintiffs' right to recover for services rendered and/or costs expended was

12 established by the terms of the leases that governed the Concord, Silverdale, Bremerton, Port

13 Angeles, Everett, Blaine, San Pablo, Santa Rosa, Oakley, and Sunnyvale projects.  Plaintiffs do

14 not challenge the validity of those contracts, but simply argue that a quasi-contractual theory

15 should be available to them if the contracts do not provide recovery.  Neither Washington nor

16 California law support such a proposition.

17         With regards to the Poulsbo project, plaintiffs may not get around the statute of

18 frauds by supplying the missing terms by implication.  Henry v. Green, 143 Wn. App. 1007

19 (2008) (quoting Cushing v. Monarch Timber Co., 75 Wash. 678, 687 (1913)).  Nor have

20 plaintiffs raised a reasonable inference that Poulsbo Holding's acquisition of property and

21 preliminary attempts to develop a pharmacy on the site provided any benefit to Rite Aid.  It is

22 undisputed that the pharmacy was never built, and there is no evidence that the real property or

23 any other asset was turned over to Rite Aid.  Plaintiff's conjecture that its work "provided Rite

24 Aid with valuable information regarding these markets" and an "opportunity to develop the

25 stores" is unsupported.  Dkt. # 44 at 5.  Rite Aid sought to lease a pharmacy from plaintiffs, not

26

ORDER GRANTING IN PART RITE AID'S
MOTION FOR PARTIAL SUMMARY JUDGMENT  -2-

1  acquire options on empty lots or obtain plat approvals that were never developed.  Absent

2  evidence that Rite Aid obtained possession of an asset or that the work plaintiffs did materially

3  advanced subsequent efforts to build a pharmacy in Poulsbo, plaintiffs have not raised a genuine

4  issue of fact as to the benefit prong of a quantum meruit claim.

5  **B.  Promissory Estoppel (Fourth Cause of Action)**

6              Promissory estoppel requires, "(1) [a] promise which (2) the promisor should

7  reasonably expect to cause the promisee to change his position and (3) which does cause the

8  promisee to change his position (4) justifiably relying upon the promise, in such a manner that

9  (5) injustice can be avoided only by enforcement of the promise."  Corbit v. J.I. Case Co., 70

10  Wn.2d 522, 539 (1967).  See also U.S. Ecology, Inc. v. State, 28 Cal. Rptr.3d 894, 901 (Cal.

11  App. 2005).  Plaintiffs' promissory estoppel claim is an alternative to or adjunct of its breach of

12  contract claim:  if the factfinder were to conclude that the agreed-upon extensions of the delivery

13  dates for Concord, Port Angeles, Everett, Blaine, San Pablo, Santa Rosa, Oakley, and Sunnyvale

14  lacked consideration or were otherwise unenforceable in contract, plaintiffs may seek a

15  balancing of the equities in order to avoid injustice.  See Corey v. Pierce County, 154 Wn. App.

16  752, 768 (2010); Kim v. Dean, 133 Wn. App. 338, 346-47 (2006); Kajima/Ray Wilson v. Los

17  Angeles County Metro. Transp. Auth., 1 P.3d 63, 66 (Cal. 2000).  Plaintiffs may, therefore,

18  proceed on their promissory estoppel claim as to Concord, Port Angeles, Everett, Blaine, San

19  Pablo, Santa Rosa, Oakley, and Sunnyvale.[1]

20              The promissory estoppel claim fails with regards to the Silverdale, Bremerton, and

21  Poulsbo projects, however.  Promissory estoppel requires, in the first instance, a promise:

22  "although promissory estoppel may apply in the absence of mutual assent or consideration, the

23

24  _____

25  [1]  In reply, Rite Aid argues that plaintiffs will not be able to establish damages arising from their reliance on the delivery dates set forth in the T-rex reports.  This issue was not timely raised and has not been considered in ruling on this motion.

26  ORDER GRANTING IN PART RITE AID'S
MOTION FOR PARTIAL SUMMARY JUDGMENT  -3-

doctrine may not be used as a way of supplying a promise."  <u>Havens v. C&D Plastics, Inc.</u>, 124 Wn.2d 158, 173 (1994).  There is no evidence that defendants promised to extend the delivery dates for the Silverdale and Bremerton projects beyond December 2010, when the termination letters were sent.

With regards to Poulsbo, the Washington Supreme Court has consistently declined to adopt Restatement (Second) of Contracts § 139, which would allow a party to use promissory estoppel to avoid the statute of frauds.  <u>See</u> <u>Greaves v. Med. Imaging Sys., Inc.</u>, 124 Wn.2d 389, 398-401 (1994).  While there is some indication that Washington courts might be willing to ignore the statute if its application would be "grossly unjust" (<u>Lectus, Inc. v. Rainier Nat'l Bank</u>, 97 Wn.2d 584, 588 (1994)), that is not the case here.  As discussed more fully in the "Order Granting in Part Thrifty's Motion for Partial Summary Judgment," the parties never reached an agreement regarding a key term of the Poulsbo lease – the rental amount.  Defendants made no promises as to the amount they would pay in rent, no lease was signed, and plaintiffs were fully aware of these facts.  Plaintiff Nicholson was an experienced real estate developer who knew the requirements of the statute of frauds and yet failed to provide defendants with the cost and expense data they needed to calculate the rental payment and finalize the contract.  There is no indication that defendants misled plaintiffs into believing that a partial oral agreement for a twenty year lease of real property would be effective:  plaintiffs' efforts to develop the Poulsbo site were made on the hopeful assumption that the parties would eventually reach agreement, not in reasonable reliance on any promise made by defendants.  If the equities in <u>Greaves</u> did not warrant the adoption of Restatement (Second) of Contracts § 139, the circumstances of this case certainly do not.

**C.  Breach of Fiduciary Duty (Fifth Cause of Action)**

Plaintiffs have abandoned their breach of fiduciary duty claim.

ORDER GRANTING IN PART RITE AID'S
MOTION FOR PARTIAL SUMMARY JUDGMENT  -4-

1  **D.  Washington Consumer Protection Act ("CPA") (Sixth Cause of Action)**

2         The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts

3  or practices in the conduct of any trade or commerce."  RCW 19.86.020.  A private cause of

4  action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or

5  commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or

6  property.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780

7  (1986).  Defendant argues that the termination of the leases was not "unfair or deceptive" and

8  that this private contract dispute does not affect the public interest.

9         The CPA does not define "unfair or deceptive."  It is up to the courts, through a

10  "gradual process of judicial inclusion and exclusion," to determine whether a particular act is

11  unfair or deceptive.  Saunders v. Lloyd's of London, 113 Wn.2d 330, 344 (1989); Klem v.

12  Wash. Mut. Bank, 176 Wn.2d 771, 786 (2013) ("Given that there is no limit to human

13  inventiveness, courts, as well as legislatures, must be able to determine whether an act or

14  practice is unfair or deceptive to fulfill the protective purposes of the CPA.") (internal quotation

15  marks omitted); Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150 (1997).  In

16  making that determination, courts consider whether defendants misrepresented something of

17  material importance (Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App.

18  210, 226 (2006)), whether the statement or act has the capacity to deceive a substantial portion

19  of the population (Sing v. John L. Scott, Inc., 134 Wn.2d 24, 30 (1997)), and whether the act

20  constitutes a per se violation of a statute or a violation of the public interest (Klem, 176 Wn.2d at

21  787).  The Court will assume, for purposes of this motion, that agreeing to extend a contractual

22  deadline, accepting continuing performance as if the contract had been extended, and then

23  unilaterally enforcing the original deadline is an "unfair" practice.

24         To be actionable under the CPA, the unfair practice must also affect the public

25  interest.  Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 74

26

ORDER GRANTING IN PART RITE AID'S
MOTION FOR PARTIAL SUMMARY JUDGMENT  -5-

1  (2007).  Where the transaction is a private, contractual dispute affecting no one but the parties, it

2  is ordinarily not an act or practice affecting the public interest.  Hangman Ridge, 105 Wn.2d at

3  790.

> [I]t is the likelihood that additional plaintiffs have been or will be injured in
> exactly the same fashion that changes a factual pattern from a private dispute to
> one that affects the public interest. . . .  Factors indicating public interest in this
> context include:  (1) Were the alleged acts committed in the course of defendant's
> business?  (2) Did defendant advertise to the public in general?  (3) Did defendant
> actively solicit this particular plaintiff, indicating potential solicitation of others?
> (4) Did plaintiff and defendant occupy unequal bargaining positions?

9  Hangman Ridge, 105 Wn.2d at 790-91 (internal citation omitted).  Plaintiffs argue that the

10  public interest element is satisfied because defendants terminated thirty-three development

11  projects between January 1, 2008, and December 31, 2011.  Eleven of those terminations

12  represent plaintiffs' projects.  The remaining twenty-two projects were handled by nine other

13  preferred developers.  Although it is clear that any statements and acts aimed at these nine

14  developers occurred in the course of defendants' business, there are no facts from which one

15  could infer that the business relationships grew out of advertisements to the general public, that

16  defendants solicited the developers, that any such advertisements or solicitations misled or

17  misrepresented a material fact, or that the contracting parties occupied unequal bargaining

18  positions.  There is also no indication that any of these nine developers suffered the "unfair"

19  practice alleged by plaintiff:  the circumstances surrounding the twenty-two terminations are

20  unknown.  Plaintiffs request an opportunity to conduct discovery regarding this critical element

21  of their CPA claim.  Because discovery is not scheduled to close for another six months, the

22  motion for judgment on the CPA claim is denied without prejudice to its being raised again.

23  **E.  California Business and Professions Code § 17200 (Seventh Cause of Action)**

24  California's Unfair Competition Law ("UCL") precludes "unlawful, unfair or

25  fraudulent business act[s] or practice[s] . . . ."  Cal. Civ. Code § 17200.  "While the scope of

26

ORDER GRANTING IN PART RITE AID'S
MOTION FOR PARTIAL SUMMARY JUDGMENT  -6-

conduct covered by the UCL is broad, its remedies are limited.  A UCL action is equitable in nature; damages cannot be recovered."  <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 63 P.3d 937, 943 (Cal. 2003).  Section 17203 of the Business and Professions Code authorizes injunctive relief and the restoration "to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

        Plaintiffs seek to recover "restitution for benefits conferred on another party."  Dkt. # 44 at 12.  As noted above, however, there is no evidence that plaintiffs' unsuccessful attempts to acquire and develop property in various locations bestowed a benefit on defendants or, in the parlance of § 17203, that defendants "acquired" any money or property by means of their allegedly deceptive promise to extend the delivery deadlines.  The pharmacies were never built and there is no indication that the aborted developments aided defendants in any way.  An order for restitution under the UCL is one that compels "defendant[s] to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property . . . ."  <u>State v. Altus Finance, S.A.</u>, 116 P.3d 1175, 1188 (Cal. 2005) (quoting <u>Kraus v. Trinity Mgmt. Serv., Inc.</u>, 999 P.2d 718, 725 (2000)).  Plaintiff's conjecture that its work benefitted defendants is insufficient to raise a genuine issue of fact regarding an essential element of their UCL claim.[2]

**F.  Punitive Damages (Eighth Cause of Action)**

        Plaintiffs have abandoned their claim for punitive damages.

**G.  Tortious Interference (Ninth Cause of Action)**

        Plaintiffs have abandoned their tortious interference claim.

_____

        [2]  To the extent plaintiffs seek recovery of costs and expenses incurred in reliance on defendants' promises to extend the delivery due dates on the projects, the claim is one for damages that are not recoverable under the UCL.

ORDER GRANTING IN PART RITE AID'S
MOTION FOR PARTIAL SUMMARY JUDGMENT  -7-

**H.  Liability on Guaranties (Tenth Cause of Action)**

Rite Aid argues that it can have no liability on its guaranty of defendant Thrifty's lease obligations because the leases were validly terminated.  For the reasons stated in the "Order Granting in Part Thrifty's Motion for Partial Summary Judgment," plaintiffs cannot establish liability on the leases for the Poulsbo, Silverdale, and Bremerton projects:  Rite Aid cannot be liable as guarantor if the principal obligor is not liable.  Plaintiffs may, however, seek to hold Rite Aid liable on its guaranties related to Concord, Port Angeles, Everett, Blaine, San Pablo, Santa Rosa, Oakley, and Sunnyvale.

For all of the foregoing reasons, Rite Aid's motion for summary judgment is GRANTED in part and DENIED in part.  Plaintiffs' quantum meruit, fiduciary duty, UCL, punitive damage, and tortious interference claims against Rite Aid are dismissed in their entirety.  Plaintiffs' promissory estoppel claim is dismissed as to the Poulsbo project only.  Plaintiffs' guaranty claim is dismissed as to the Poulsbo, Silverdale, and Bremerton projects.  Plaintiffs may proceed on their promissory estoppel claim as to Concord, Silverdale, Bremerton, Port Angeles, Everett, Blaine, San Pablo, Santa Rosa, Oakley, and Sunnyvale and on their guaranty claim as to Concord, Port Angeles, Everett, Blaine, San Pablo, Santa Rosa, Oakley, and Sunnyvale.  Plaintiffs may also proceed with discovery related to their CPA claim.

Dated this 18th day of February, 2014.

*Mrk S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART RITE AID'S
MOTION FOR PARTIAL SUMMARY JUDGMENT  -8-