UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                            )
BRENT NICHOLSON, *et al.*,                      )
                                                            )   No. C12-1121RSL
                        Plaintiffs,             )
            v.                                              )   ORDER DENYING DEFENDANTS'
                                                            )   MOTION FOR RECONSIDERATION
THRIFTY PAYLESS, INC., *et al.*,                )
                                                            )
                        Defendants.             )
_____)

On February 18, 2014, the Court granted in part and denied in part defendants' summary judgment motions. Defendants filed a timely motion for reconsideration on a number of issues. Dkt. # 59. Pursuant to Local Civil Rule 7(h)(3), the Court gave plaintiffs an opportunity to respond to the motion for reconsideration: no reply was requested. Dkt. # 62. The Court expressed particular interest in defendants' arguments regarding San Pablo and Santa Rosa and the acknowledgment requirement under Washington law. Each of defendants' arguments are considered below.

**A. San Pablo and Santa Rosa**

Defendants argue that plaintiffs repudiated the leases for San Pablo and Santa Rosa, thereby excusing defendants' performance under the leases and immunizing them from any liability arising out of the letters of termination. While this argument was not clearly

ORDER DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION

asserted in the underlying motion for summary judgment with regards to San Pablo,[1] defendants did provide evidence from which a reasonable fact-finder could conclude that plaintiffs told defendants that they were walking away from both projects. With regards to Santa Rosa, plaintiff Nicholson let defendants know that he was "dropping this deal as [he] could not go forward without 100% certainty from RAD now." Dkt. #28-4 at 109. With regards to San Pablo, Nicholson announced on April 1, 2009, that he had "lost control of the San Pablo deal," that he had lost all of the money he had invested in the project, and that he could not make the required deposit and close on the land purchase in a timely manner. Dkt. # 28-4 at 32.

Anticipatory repudiation requires a clear and positive statement or action that expresses an intent not to perform under the contract. Wallace Real Estate Inv., Inc. v. Groves, 124 Wn.2d 881, 898 (1994). Both statements, standing alone, could be interpreted as declarations that plaintiffs would not be completing the projects. Taken in the larger context of the parties' relationship, however, the meaning of the statement regarding Santa Rosa is less clear. The day before Nicholson made the statement, defendants had demanded changes to the original Santa Rosa lease in order to accommodate their new return on investment requirements. Nicholson then sent the "dropping this deal" email, essentially indicating that he could not agree to the proposed changes for that project. In context, the email appears to be part of the restructuring that defendants had initiated. The conduct of the parties thereafter also supports a finding that the statement was not intended to be and was not interpreted as a repudiation. The parties continued to discuss the project and agree to revised delivery dates, and defendants ultimately issued a termination letter based on the failure to timely deliver the project.

---

[1] The thrust of defendants' argument in the underlying summary judgment motion with regards to San Pablo was that plaintiffs breached the lease when they failed to complete the projects prior to the stated delivery dates. Dkt. # 25 at 14. Plaintiffs were likely unaware, as was the Court, that defendants were actually asserting a claim of anticipatory breach via a footnote. Dkt. # 25 at 14 n.6. Because the nature of defendants' argument was unclear, the Court has considered the additional evidence plaintiffs submitted with their opposition regarding San Pablo.

ORDER DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION          -2-

Defendants are not entitled to judgment as a matter of law on their assertion that plaintiffs repudiated the Santa Rosa lease.

With regards to the San Pablo project, the repudiation is both clear and positive. Unrelated to any on-going negotiations between the parties, Nicholson told defendants that he had lost control of the site and the money he had invested and that defendants no longer needed to worry about the project. Defendants expressed regret about the demise of the project and removed it from the T-Rex tracking system. Repudiation does not, however, automatically terminate a contract. Hemisphere Loggers & Contractors, Inc. v. Everett Plywood Corp., 7 Wn. App. 232, 234 (1972). While the non-repudiating party has the option to treat the contract as broken, it need not do so: "[i]t is commonly said that there is no breach or that the repudiation does not operate as a breach until such repudiation is treated as a breach by the other party." Walker v. Herke, 20 Wn.2d 239, 254 (1944) (quoting 12 Am. Jur, Contracts § 395). While the non-repudiating party would be entitled to rely on the repudiation to excuse his own performance or to file an immediate action for damages without having to wait for the repudiating party to actually fail to perform (Hemisphere Loggers, 7 Wn. App. at 234-35; Trompeter v. United Ins. Co., 51 Wash.2d 133, 316 P.2d 455 (1957)), it could also treat the contract as still in existence and insist on performance. The option to choose expires, however, if the repudiating party withdraws the repudiation before the non-repudiating party has materially changed its position in reliance on the repudiation.

Shortly after sending the "lost control" email, plaintiffs made it clear that they were still working to regain control of the San Pablo site and declined to sign a lease termination document presented by defendants. Defendants were aware that plaintiffs believed San Pablo was still in play, yet they did not declare an anticipatory breach, withhold their own performance, or otherwise make a material change of position in reliance on the alleged repudiation. Rather, defendants waited until the day the original delivery window expired to

ORDER DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION         -3-

issue a termination letter based on an actual, rather than an anticipated, breach. Having chosen to proceed as if the contract were still in force, there is an issue of fact regarding whether plaintiffs effectively withdrew the repudiation.

**B. Concord and Sunnyvale**

Defendants argue that, because Nicholson declined to take part in a conference call scheduled for December 2, 2009, the T-Rex report that it sent to him the previous day is a nullity. The argument is factually unsupported and logically tenable. The T-Rex report at issue reflected agreements reached during the previous conference call. There is no indication that those dates were not mutually agreed upon or that Nicholson otherwise rejected the November 30, 2009, T-Rex report.

**C. Abandonment of All Projects**

Defendants argue that plaintiffs abandoned all of the projects months before the termination letters were issued. To the extent defendants are arguing that plaintiffs repudiated all of the leases, the argument is untimely and defendants have not identified the necessary clear and positive statement as to each project.

**D. Ability to Perform**

Defendants argue that plaintiffs cannot prevail in this action because they have not shown that they were willing and able to perform under the leases. Plaintiffs were, however, taking steps to develop the projects: in other words, they were performing. Defendants seem to be arguing that plaintiffs are barred from bringing a breach of contract claim unless they were ready, willing, and able to make immediate delivery of the projects. The "ready, willing, and able" requirement arose in circumstances where the party asserting a breach was also in default. See Willener v. Sweeting, 107 Wn.2d 388, 394 (1986); Kreger v. Hall, 70 Wn.2d 1002, 1009 (1967). Those circumstances do not apply here if the factfinder determines that the delivery dates for the various leases were extended into the future. If that were the case, the time for

plaintiffs' performance had not yet come when defendants issued the termination letters.  In addition, Nicholson has stated that, despite the woes that beset the construction industry during the national liquidity crisis, plaintiffs would have been able to raise the additional funds necessary to complete the projects if defendants had not breached their promises to extend the delivery dates.  While that assertion is rather doubtful as to the San Pablo project (which had a revised delivery date in 2010), defendants cut off any chance plaintiffs had of performing under the leases as modified.  Defendants have not established, as a matter of law, that plaintiffs would not have been ready, willing, and able to perform on time and as scheduled if given the benefit of the revised construction schedules.[2]

### E. Acknowledgment for Washington Real Estate Transactions

Defendants argue, as they did in the underlying motion, that Washington law requires modifications of a multi-year lease to be both in writing and acknowledged.[3]  If the fact finder determines that the "Anticipated Delivery Dates" in the Blaine, Everett, and Bremerton leases are simply estimates or guides subject to change as the project progressed, the promises contained in the T-Rex reports would "not purport to rise to the dignity of a modification of the lease" and would not, therefore, require an acknowledgment.  Broxson v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co., 446 F.2d 628, 631 (1971).  Even if the parties intended the delivery dates to be set in stone, the statue of frauds applies to the creation and modification of a tenancy of real estate for a period longer than one year.  The modifications at issue here – namely alterations to the construction timeline – do not affect the boundaries of the leased property, the term of the lease, or the rent paid.  Defendants have not identified, and the Court has not found,

---

[2] Nor is it clear that the case law involving anticipatory repudiation governs plaintiffs' claims.  Plaintiffs have alleged an actual breach, namely the premature termination of the leases in violation of parties' agreements, not an anticipatory statement of an intent not to perform.

[3] The most common form of an "acknowledgement" as that term is used in Washington law is the certification of a Notary Public.  See RCW 42.44.100; RCW 64.08.050.

ORDER DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION            -5-

any case in which the modification of such a non-essential item was found to trigger the statute of frauds anew.[4]  Finally, Washington law gives courts the authority to enforce leases "that do not fully comply with statutory requisites when under the facts it would be inequitable for the challenging parties to assert invalidity of their own agreements." <u>Tiegs v. Watts</u>, 135 Wn.2d 1, 15 (1998).  Because it would be inequitable for defendants to avoid their undisputed, written promises to extend the delivery dates, thereby inducing plaintiffs to continue working on and incurring costs related to the projects, the type of equitable estoppel discussed in <u>Tiegs</u> applies here.

### F. Functional Equivalent of "Delivery Date"

Defendants argue that there is no evidence that the parties intended any of the column headings in the T-Rex reports to be "functionally identical" to the delivery date found in the leases.  On summary judgment, the evidence is viewed in the light most favorable to the non-moving party.  The record, when viewed favorably to plaintiff, shows that the "Fixture Date" is the functional equivalent of the "Delivery Date" and that the "Official Open Date" is approximately six to twelve weeks after the "Fixture Date."  Thus, when the parties agreed to push the "Official Open Date" off into the distant future (January 1, 2025, was the placeholder date entered into T-Rex), the reasonable inference is that the "Fixture Dates" for Concord, Port Angeles, Everett, Blaine, Santa Rosa, Oakley, and Sunnyvale were postponed to a two month window in late 2024.

### G. Defined Terms Cannot be Ambiguous

Defendants disagree with the Court's finding that the parties' intent with regards to the term "Anticipated Delivery Date" is ambiguous.  The Court declines to reconsider its prior ruling.

---

[4] The parties apparently did not believe the statute applied to every alteration of the original leases, having eschewed acknowledgments on the formal amendments generated for third parties.

ORDER DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION                     -6-

**H. No Independent Claim for Breach of Duty of Good Faith and Fair Dealing**

Defendants disagree with the Court's finding that a breach of the duty of good faith and fair dealing gives rise to a separate and independent cause of action that is regularly heard by the courts of Washington and California. The Court reiterates that plaintiffs can establish a duty of good faith and fair dealing only in the context of an existing contract (which obviously exists in this case) and declines to reconsider its prior ruling.

For all of the foregoing reasons, defendants' motion for reconsideration is DENIED.

Dated this 22nd day of May, 2014.

/s/ *Robert S. Lasnik*

Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION            -7-