UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRENT NICHOLSON, *et al.*,

          Plaintiffs,

    v.

THRIFTY PAYLESS, INC., *et al.*,

          Defendants.

No. C12-1121RSL

SECOND ORDER ON REMAND

This matter comes before the Court on "Plaintiff Nicholson's Motion for Order on Remand" (Dkt. # 200) and "Defendants' Motion for Release of Escrow Funds" (Dkt. # 202).[1] The Ninth Circuit Court of Appeals remanded this matter to the undersigned "to address the disposition of funds held in escrow." Dkt. # 196 at 3. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

On November 24, 2015, Nicholson and defendants agreed to place $2.2 million into an escrow account "to maintain funds awarded to [defendants] in a judgment and attorney fee award entered in the case *Brent Nicholson, et al., Plaintiffs, v. Thrifty Payless, Inc and Rite Aid*

---

[1] Nicholson's requests to strike defendants' motion and award sanctions are DENIED. Both parties seek affirmative relief from the Court: the filing of competing motions or cross-motions is to be anticipated in such circumstances.

[2] This matter can be decided on the papers submitted. The parties' requests for oral argument are therefore DENIED.

SECOND ORDER ON REMAND

*Corporation*, Cause No. 2:12-01121-RSL (W.D. Wash.)." Dkt. # 170-1 at 33. The Escrow Deposit Agreement noted that Nicholson was appealing the award, that he had agreed to deposit the $2.2 million in lieu of a supersedeas bond, and that defendants agreed not to execute on the judgment and fee award while the appeal was pending. Id. The issue remaining in this case is whether the $2.2 million was deposited in the escrow account to serve as security for only the award entered against Nicholson personally or for the entirety of the judgment and award.

The purpose of contract interpretation is to ascertain the intention of the parties at the time of contracting. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 282 (2013). The Supreme Court of Washington has rejected a "plain meaning" analysis, recognizing that "[a] word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Berg v. Hudesman, 115 Wn.2d 657, 664 (1990) (quoting Towne v. Eisner, 245 U.S. 418, 425 (1918) (Holmes, J.)). Instead of focusing exclusively on the written words, "[d]etermination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." Id. at 667 (quoting Stender v. Twin City Foods, Inc., 82 Wn.2d 250, 254 (1973)). Although extrinsic evidence cannot be admitted to change, add to, or subtract from the written agreement, "[i]f the evidence goes no further than to show the situation of the parties and the circumstances under which the instrument was executed, then it is admissible." Id. at 669 (quoting J.W. Seavey Hop Corp. v. Pollock, 20 Wn.2d 337, 348-49 (1944)).

At the time the Escrow Deposit Agreement was executed, Nicholson and the eleven LLC plaintiffs were jointly and severally liable for the fee award referenced in the agreement. Dkt.

SECOND ORDER ON REMAND             -2-

# 142 at 9.³ If, as the ordinary meaning of the words chosen by the parties suggests, the $2.2 million were placed into the escrow account to ensure that funds were available to pay the judgment and attorney's fee award in this case, that would include not only Nicholson's personal liability, but also the debts of the LLC plaintiffs. Nicholson, however, argues that the context in which the Escrow Deposit Agreement was drafted shows that the parties intended to secure only his personal liabilities, citing:

- Nicholson's pre-deposit statements regarding his intent to obtain sufficient cash to secure the judgment and award against him personally (Dkt. # 149; Dkt. # 150 at ¶ 17);
- the terms of an interim agreement between Nicholson and defendants designed to maintain the status quo while they negotiated an alternative security agreement (Dkt. #170-1 at 2-3);
- the lack of any explicit, contemporaneous statement on defendants' part that the funds in the escrow account were to secure payment of both Nicholson's and the LLC's liabilities in this case;
- the statement in the Escrow Deposit Agreement that Nicholson was appealing the judgment and award (Dkt. # 170-1 at 33); and
- Nicholson's post-appeal efforts to recover the funds deposited in the escrow account consistent with his belief that the funds were maintained to secure only the judgment and award entered against him personally (Dkt. # 163; Dkt. # 170-1 at 10).

Nicholson asserts that he never intended to put his personal funds at risk to backstop

---

³ The judgment entered on February 5, 2015, was for overpaid rents and was entered against Nicholson and No One to Blaine, LLC.

SECOND ORDER ON REMAND                -3-

defendants' judgment and fee award against the LLC plaintiffs. The evidence in the record amply supports a finding that Nicholson's original plan was to secure only his own liabilities and that he never wanted to put money behind the LLC plaintiffs. The objective manifestations of the parties' intent at the time of contracting, however, differed from Nicholson's starting position and preferred outcome.

Shortly after the Court found that Nicholson and the eleven LLC plaintiffs were jointly and severally liable for $1,819,340.21 in attorney's fees and costs, defendants began collection efforts against all twelve plaintiffs. On July 8, 2015, Nicholson moved for a "stay of execution of the judgment and fee order *against him* pending appeal" and offered to make alternative security available in that context. Dkt. # 149 at 1 (emphasis added). Defendants were willing to discuss the possibility, and the parties' negotiations through August 17, 2015, were arguably based on the proposal made in the motion to stay. Nicholson agreed to sell property held by another one of his LLCs and to place his share of the proceeds into an escrow account to pay any award of attorney's fees that survived the appeal. Defendants, who were the tenants at the property Nicholson proposed to sell, agreed to extend the lease period on the property (thereby increasing its market value) and to forego further efforts to execute on the judgment and award if the escrow account were fully funded. References to Nicholson's motion papers during this period at least raise an inference that the parties were focused on ways to safeguard the judgment defendants had against Nicholson personally and to stop collection efforts against his assets.

By mid-August 2015, the parties were in the midst of negotiating the paragraph of the amended lease that would contain the terms of the parties' agreement regarding the purpose, funding, and effect of the escrow account. As part of that paragraph 13, the landlord/seller acknowledged that a portion of the anticipated sale proceeds would be placed in escrow to satisfy any fee award in this case that survived the appeal. Dkt. # 203-2 at 3-4. At that point, Nicholson's attorney apparently recognized some ambiguity in the language as drafted and attempted to make clear that the relevant judgment and fee award was "against one of Landlord's

members," *i.e.*, Nicholson. Dkt. # 203 at ¶ 14. Defendants' response was to rewrite paragraph 13 to state that the escrow fund was being created and held "as security for payment of Tenant's Claim" and to define "Tenant's Claim" as the judgment and fee award that was entered in this case "against Landlord's member Brent Nicholson *and other Plaintiffs*." Dkt. # 203-3 at 3-4 (emphasis added). Nicholson's litigation counsel proposed a version of paragraph 13 that deleted the term "Tenant's Claim" and specified that use of the funds would be "in accordance with the terms of Nicholson's motion for a stay pending appeal," which, as described above, disclosed a plan to obtain sufficient cash to secure the judgment and award against him personally. Dkt. # 203-4 at 3. Ultimately, the signed lease amendment states:

> In the recent case of "*Brent Nicholson, et al., Plaintiffs, v. Thrifty Payless, Inc. and Rite Aid Corporation, Defendants*, W.D. Wash. No. 12-cv-01121" ("the Case") a judgment and an award for attorneys' fees has been entered in favor of Defendants against Landlord's member Brent Nicholson ("Nicholson") and other Plaintiffs ("Tenant's Claim"). The judgment and attorney fee award is currently subject to an appeal to the United States Court of Appeals for the Ninth Circuit, but no supersedeas bond has been filed. Nicholson has filed a motion for a stay pending appeal in the Case, in which he has offered to agree that his share of net proceeds of any sale of the Premises by Landlord, up to $2.2 million, shall be placed into a blocked account subject to the terms of a proposed Order staying any collection activity by Tenant pending the conclusion of the appeal. . . . Landlord has agreed, and hereby agrees that Nicholson's approximate 65% of the proceeds of any sale of the Premises . . . shall be placed into an escrow account . . . which sum shall remain in escrow as security for payment of Tenant's Claim at the time and consistent with a final ruling of the Court of Appeals regarding Tenant's Claim.

Dkt. # 170-1 at 6-7. Although the final language of the amended lease acknowledges Nicholson's motion to stay and his appeal (as does the subsequent Escrow Deposit Agreement), defendants did not accede to Nicholson's request that the disposition of the funds be limited by the terms of the motion.

The amended lease, through which the parties set forth their agreement for obtaining the funds that were to be put into escrow, gives context to the Escrow Deposit Agreement's

SECOND ORDER ON REMAND               -5-

statement that the parties "enter into this agreement to maintain funds awarded to [defendants] in a judgment and attorney fee award entered in [this] case . . . ." Dkt. # 170-1 at 33. Nicholson may have wanted to secure only his own, personal liability, but the negotiations did not go his way. Defendants rejected Nicholson's efforts to limit the use of the escrowed funds to secure the liabilities of "one of the Landlord's members" or as set forth in his original motion to stay, instead insisting on language authorizing use of the escrow fund to pay the "Tenant's Claim," defined as the judgment and fee award against Nicholson and the other LLC plaintiffs.

In their declarations, Nicholson and his attorney barely acknowledge the substantive negotiations regarding the relevant lease amendment language, and neither provides any extrinsic evidence related to the interpretation of the words that were actually used in paragraph 13. That Nicholson hoped and, until the very end, intended to secure only the judgment entered against him, personally, can be credited *in toto*, but it cannot be used to alter, add to, or subtract from the contract terms as they were actually written. Oliver v. Flow Int'l Corp., 137 Wn. App. 655, 660 (2006). Courts applying Washington law "attempt to determine the parties' intent by focusing on the objective manifestations of the agreement" and will "not interpret what was intended to be written but what was written. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 504 (2005). Nicholson offers extrinsic evidence of his original intent in proposing alternative security and his unilateral post-contracting actions, as well as ambiguous references to his appeal and motion to stay in the lease amendment and/or Escrow Deposit Agreement. He contends the evidence illuminates certain terms in the deposit agreement because it reveals a mutual intent to safeguard funds only for the payment of Nicholson's personal liabilities. This is an improper use of extrinsic evidence because the result Nicholson seeks is to insert a new limitation into the deposit agreement, thereby altering its terms. The express terms of the agreement do not limit the use of the escrow funds to satisfying Nicholson's personal liability, and he offers no justification for inserting the phrase "against Nicholson" into the agreement's statement of purpose. The context in which the Escrow Deposit Agreement arose does not help

him either. Defendants twice rejected Nicholson's efforts to insert a limitation on the use of the escrowed funds into the underlying lease amendment, and Nicholson offers no plausible alternative interpretation of "Tenant's Claim" that would support such a limitation. Based on the existing record, Nicholson has not raised a genuine issue of fact regarding the intent of the parties at the time of contracting.

For all of the foregoing reasons, Nicholson's motion to release funds (Dkt. # 200) is DENIED and defendants' motion to release funds (Dkt. # 202) is GRANTED. It is hereby ORDERED that the $2.2 million of funds held in Commerce Bank of Washington's escrow account, plus any interest accrued thereon, be released to defendant Thrifty Payless, Inc., c/o Van Kampen & Crowe PLLC, 1001 Fourth Avenue, Suite 4050, Seattle, WA 98154, within seven days of receipt of this Order.

DATED this 29th day of August, 2019.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge